<hr />

THE CITY OF MACON.

THE EVA WALL.

McLEAN v. THE CITY OF MACON et al.

(District Court, E. D. Pennsylvania. January 28, 1898.)

COLLISION—STEAMER WITH TOW.

A steamer ascending the eastern channel of the Delaware river below Greenwich Coal Piers, and meeting a tug with a schooner in tow coming down the eastern side of the channel, held solely in fault for a collision with the tow, where the tug signaled that it would keep to the eastern

side of the channel, to which the steamer first assented, but afterwards attempted to pass to the eastward, when it was too late for the tug and tow to go to the west, and persisted therein in spite of the repeated signals of the tug that she would keep to the eastern side.

These were libels in rem to recover damages resulting from a collision.

Edward F. Pugh and Henry Flanders, for the William Jones.

Horace L. Cheyney and John F. Lewis, for the City of Macon.

Henry R. Edmunds, for the Eva Wall.

BUTLER, District Judge. As the tug "Eva Wall" with the schooner "William Jones" in tow was passing down the easterly side of what is called the eastern channel of the river Delaware a short distance below Greenwich Coal Piers, on August 16, 1895, the steamship "City of Macon" came up the same channel and turning eastward ran into the schooner. Two sloops at the same time were beating their way up the western channel, and a tug and tow were going down. The presence of these vessels in the western channel was doubtless the cause of the "Wall" and the steamship taking the other. The tide was flood, and the shape of the river tended to set it eastward. Two or three vessels were anchored between the channels, but their situation is unimportant.

The schooner, charging the steamship alone, with fault, libeled her for compensation for the damage inflicted on the former vessel. Subsequently the steamship brought the "Wall" in as responsible for the collision; and also libeled her for injury sustained by the steamship. The schooner is admitted to be blameless; and she is therefore entitled to recover of one, if not of both respondents. It seems clear that the steamship was in fault. Admitting that the "Wall" should have gone to the western side of the channel, that the steamship signaled her to do so and had a right to pass eastward, under ordinary circumstances, she should not have persisted in going there, as she did, against the repeated signals of the "Wall" that she would continue down the eastern side. There was sufficient room for the steamship on the western side, where she could have passed conveniently and avoided the collision. It was her persistence in what she may have deemed her right, that produced the disaster. Supposing the tug to have been plainly wrong in running where she did, the steamship was as plainly wrong in continuing her course eastward after receiving timely and repeated notice that she could not pass on that side. It was her duty to avoid the accident if she could (notwithstanding the fault of the tug, if she was in fault) and it seems entirely clear that she could. It is undisputed that she was warned as soon as the vessels came within view and repeatedly thereafter, that she could not pass on the eastern side, that the "Wall" would hold her course there, and yet she persisted in going over, and thus struck the schooner. Aside, therefore, from the question respecting her first signal, yet to be considered, she was in fault; and is responsible to the schooner.

Was the tug "Wall" also in fault? If she was it is because she went to the eastern side and continued her course there. That she had a

right to run down the eastern channel, and the steamship a right to run up it, I have no doubt. As before stated, the water was sufficient for both. Granting that it was the steamship's right under ordinary circumstances to pass on the eastern side, and the "Wall's" duty to go westward (a question that need not be considered in view of the testimony), and that the "Wall's" persistence in keeping eastward should be considered a fault if not explained, and justified by the explanation, we are brought to the question, is her conduct in this respect, so explained and justified? Is it true, as she alleges, that the steamship, at first agreed that she should run there, and did not turn eastward and signal accordingly until the situation had become such that she, the tug, could not safely change her course? If it is true, the "Wall" is blameless in running where she did. It is to this point that nearly all the testimony is directed, and there is much of it. While it is conflicting, its weight, in my judgment, is clearly in favor of the "Wall." It would not serve any useful purpose to cite and discuss this testimony. I am fully convinced, after a patient examination of it, that when the "Wall" who signaled first, thus expressed her purpose to keep her course on the eastern side (as the vessels came into view), the steamship signaled her consent by answering that she would go westward; that she continued her course (which without change would probably have taken her safely past the tug and tow) for a time, while the "Wall" kept her course eastward; and then, when it was too late for the latter vessel to change without danger, the steamship signaled that she would pass eastward, and turned in that direction—the "Wall" replying that she would hold her course on the eastern side. The witnesses who sustain this view are numerous and positive, and many of them disinterested. Why the steamship did not adhere to the purpose expressed by her first signal, cannot be known. By turning eastward when she did she incurred risk. It is said to be incredible therefore that she should have so turned at this time, instead of that at which she first signaled, as her witnesses testify she did. But it seems hardly more incredible than that she should have persisted in running eastward against the warning of the "Wall" that she could not pass on that side, as she certainly did, and thus plainly run into danger. She saw that the "Wall" steadily kept the eastern side, and heard her repeated refusal to change, and yet she kept on. Nor does it seem materially more incredible than that the "Wall" should have insisted on keeping the eastern side, to the serious danger of herself and tow, after seeing that the steamship was determined to run there and was coming at a high rate of speed, if she, the tug, could have safely turned westward, as the steamship says she could.

I find that the tug "Wall" was not in fault, and that the steamship alone was blamable for the collision.

I do not think the question of lookout, raised by the steamship, is material. The "Wall" saw the steamship as early as the latter saw her, and probably as early as she could have been seen in the situation of the vessels. She was the first to signal, and signaled in ample time. I do not see any fault, as charged, in her failure to slow down or stop earlier than she did. Indeed I think her chance of escape was in-

creased by keeping on; a few seconds more would have carried the tow out of danger. Nor do I see any ground for the question raised about crossing courses, under rule 16. The bows of the vessels were gradually changing in consequence of the shape of the river there. The rule does not apply to such a situation. And besides the tug was running where it had been agreed it should.